IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MAURICE A. LEE<br><br>Plaintiff,<br><br>vs.<br><br>WILL CARLSON, et al.,<br><br>Defendants. | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:03-CV-01098 |

Plaintiff, Maurice A. Lee, an inmate at the Utah State Prison, filed this *pro se* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2006). Plaintiff's motion to proceed *in forma pauperis* under 28 U.S.C. § 1915 was granted. *See* 28 *id.* § 1915. On screening under 28 U.S.C. § 1915(e)(2)(b) the court dismissed all but one of Plaintiff's claims and ordered official service of Plaintiff's remaining First Amendment claim upon Defendants. Defendants were later directed to prepare a *Martinez* report which was timely filed with a motion for summary judgment. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Plaintiff has responded to Defendants' summary judgment motion which is now properly before the court.

## BACKGROUND

Plaintiff's remaining First Amendment claim asserts that prison officials violated Plaintiff's free-speech rights by confiscating his "written manuscripts, novels, short stories and

artwork" without legal justification. The record shows that on February 6, 2003, while conducting a "shakedown" of the Oquirrh 5 facility, prison officials discovered in Plaintiff's cell several hundred pages of computer generated writings produced by Plaintiff. Defendant Carlson states that the writings were printed on "non-commissary issued paper not generally available to inmates without a property contract and written [prison] authorization." (Carlson Aff. at 1.) Plaintiff disputes this assertion and has presented evidence that the paper is provided free-of-charge by the library to indigent inmates with a limit of five pages per library visit. (Pl.'s Opp. Mem. Ex. A at 3.)

During a subsequent search of the facility library, where Plaintiff worked, officers discovered several computer discs containing electronic copies of the same writings. According to Plaintiff, these discs were found "in the appropriate place properly secured in a locked cabinet within the work area in compliance with library policy." (Pl.'s Opp. Mem. at 5.) Defendants do not dispute Plaintiff's evidence regarding where the computer discs were found or the nature of Plaintiff's access to them. Upon further examination of the writings, officials found one of the stories, entitled "Sharing Sisters," to be sexually explicit and in violation of prison policies banning such material. Both the printed copies and the discs were confiscated as contraband and no receipt or confiscation slip was given to Plaintiff.

On March 10, 2003, Plaintiff filed an initial grievance challenging the confiscation of the manuscripts and discs.[1] In response, Defendant Farnsworth stated that because Plaintiff "used state equipment while on state time to write, print and compose [the] manuscripts . . . they are

---

[1] Although the initial grievance form is dated by Plaintiff March 3, 2003, it was stamped received on March 10, 2003.

considered work product over which [Plaintiff has] no property rights . . . ." (*Martinez* Rpt. Ex. C at 1.) Farnsworth further opined that "[t]here is no intrinsic value in the words written upon the paper, the only value would be the price of the paper and then only if you could show proof of ownership of the paper by appropriate commissary receipts and/or property contract." (*Martinez* Rpt. Ex. C at 1.) Based on this reasoning, Farnsworth found that the confiscation was justified and that no confiscation slip was required. On August 15, 2003, Plaintiff was notified that the printed manuscripts had been destroyed.

Plaintiff's Level 2 grievance appeal was denied by Billie Casper, Inmate Grievance Coordinator, who stated:

> Inmates are not allowed to retain sexually explicit material, including stories written by an inmate. Assuming you can prove the paper etc. belonged to you the manuscripts must be sent out of the facility. If you used state equipment or paper to write down your original ideas you will be required to reimburse the Department for the cost.

(*Martinez* Rpt. Ex. C at 3.) Finally, on July 10, 2003, Plaintiff's Level 3 grievance appeal was denied by Chris Mitchell, Director of Administrative Services, on the grounds that the Department had failed to timely respond according to recently revised grievance procedures. (*Martinez* Rpt. Ex. C at 4.) Plaintiff was told that if he wanted to continue to pursue recovery of his writings he would have to seek a judicial remedy.

Shortly after Plaintiff's writings were seized, prison officials commenced formal disciplinary proceedings charging Plaintiff with "Unauthorized Use of a Computer." That charge was later dropped due to a "lack of supporting information" and Plaintiff was instead charged with "Possession of Contraband." Plaintiff was found guilty of the latter charge on June 26, 2003. The Disciplinary Findings Form does not address the issue of Plaintiff's ownership or

rightful possession of the paper or discs on which the writings were found, nor was Plaintiff ever disciplined for misuse of library materials or computers. Instead, the determination of guilt appears to have been based solely on the finding that "the disc contained sexually explicit stories." (*Martinez* Rpt. Ex. C at 9.)

After the denial of his final grievance appeal, Plaintiff contacted the prison contract attorneys seeking their help in recovering his manuscripts. On August 1, 2003, Wayne A. Freestone, a prison contract attorney, wrote a letter to Warden Clint Friel stating that based on his research "it appears that the prison cannot claim Mr. Lee's stories as their own." (Pl.'s Opp. Mem. Ex. H at 1.) Freestone further asked Friel to "please have your staff check into this matter and return Mr. Lee's writings, etc. to him." On August 25, 2003, Freestone sent a memo to Plaintiff stating that he met with Captain Talbot at the prison and was told that Plaintiff's stories would be returned. (Pl.'s Opp. Mem. Ex. H at 2.) The memo was accompanied by copies of relevant case law which Freestone believed supported Plaintiff's position.[2] On December 15, 2003, when prison officials failed to return the discs to Plaintiff as discussed, Freestone wrote another letter to Captain Talbot seeking confirmation of his understanding that the discs would be returned to Plaintiff. (Pl.'s Opp. Mem. Add. H at 3.) According to Freestone, prison officials never responded to his second letter. (Pl.'s Opp. Mem. Ex. H at 4.)

On December 19, 2003, Plaintiff filed this suit seeking the return of his manuscripts as well as compensatory and punitive damages of $1,600,000 from Defendants in their individual capacities.

---

[2] It is not clear from the record what specific cases Freestone provided to Plaintiff. It is also unclear whether those cases were specifically discussed with Captain Talbot or other prison officials, and whether copies were provided to them.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Thus, Rule 56(a) of the Federal Rules of Civil Procedure allows a party to move "with or without supporting affidavits for a summary judgment in the party's favor upon all or any part [a claim]." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the moving party satisfies its initial burden, "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." Id. Federal Rule of Civil Procedure 56(e) requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." Adler v. Wal-Mart Stores, 144 F.3d 664, 671 (10th Cir. 1998). The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." Thomas v. Wichita Coca-Cola Bottling, 968 F.2d 1022, 1024 (10th Cir. 1992). Mere allegations and references to the pleadings will not suffice. However, the court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the

motion." <u>Lopez v. LeMaster</u>, 172 F.3d 756, 759 (10th Cir. 1999).

## DISCUSSION

### I. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendants motion for summary judgment puts forth two grounds for relief. First, Defendants argue that Plaintiff cannot show a violation of his First Amendment rights because confiscation of Plaintiff's writings was justified by legitimate penological interests. Second, Defendants argue that even if their actions did violate Plaintiff's constitutional rights Defendants would still be entitled to qualified immunity because the right at issue was not clearly established at the time of the violation. The Court will address each of these arguments in turn.

#### A. First Amendment Analysis

**1. Legal standard**

It is well established that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." <u>Bell v. Wolfish</u>, 441 U.S. 520, 545, (1979). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974). In the free-speech context the Supreme Court has held that prison officials violate the First Amendment when, for reasons unrelated to legitimate penological interests, they engage in "censorship of . . . expression of inflammatory political, racial, religious, or other views, and matter deemed defamatory or otherwise inappropriate." <u>Id.</u> at 415 (internal quotations omitted).

In <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987), the Supreme Court held that prison regulations that impinge upon inmates' First Amendment rights are valid only if they are

"rationally related to legitimate penological objectives. The *Turner* Court articulated four factors that should be considered in determining the constitutionality of a prison's restrictions on speech: (1) whether a valid, rational connection exists between the regulation and the government interest it protects; (2) whether prisoners have alternative means of exercising the protected right; (3) the impact of accommodating the right on other inmates, guards, and the allocation of prison resources generally; and (4) whether alternatives exist that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner*, 482 U.S. at 89-90.

### 2. Prohibition against sexually explicit material

Defendants assert that confiscation of Plaintiff's writings was justified based on prison policies prohibiting inmates from possessing "sexually oriented" materials. Specifically, Defendants point to FDr27/02.08(A)-(B), which states:

> Inmates have been given the opportunity to disposition or destroy any existing sexually explicit material they possess. After July 1, 2000, this material will be considered contraband. If an inmate is found with sexually explicit material in their possession, they will be referred to OMR on the first offense. Other occurrences, of this nature, may be handled through the disciplinary process.

(Defs.' Mem. Supp. Summ. J. Ex. A at 11.)

Defendants argue that this policy bears a rational relationship to rehabilitation of sex offenders, like Plaintiff, and reduction of sexual violence among the inmate population as a whole. As Defendants point out, numerous other courts have upheld prison restrictions on sexually explicit materials on these grounds. *See Waterman v. Farmer*, 183 F.3d 208 (3d Cir. 1999); *Dawson v. Scurr*, 986 F.2d 257 (8th Cir. 1999). And, this rationale has been extended to sexually explicit writings produced by an inmate himself, where the inmate was incarcerated for a sexual offense. *See Frink v. Arnold*, 842 F. Supp. 1184 (S.D. Iowa 1994); *McGilton v. Jesko*,

206 WL 972112 (S.D. Ohio 2006).

Plaintiff does not dispute Defendants' assertion that USP policies prohibiting inmates from possessing sexually explicit materials are rationally related to legitimate penological objectives; instead, Plaintiff argues that the vast majority of his writings are not sexually explicit and, thus, cannot be justifiably withheld on that ground. Specifically, Plaintiff asserts that of the hundreds of pages of writings taken from him, which are organized into sixteen separate volumes, only one volume of roughly 122 pages contains sexually explicit material. Plaintiff concedes that prison officials were justified in confiscating that portion of his writings and has moved to sever that material from the remainder of his writings for purposes of this litigation.[3] Finally, Plaintiff argues that Defendants were aware that only a small portion of his writings were sexually explicit but used that as a pretext to confiscate all of his writings.

Based on its *in camera* review of the confiscated materials, the court agrees that only a small fraction of Plaintiff's writings qualify as sexually explicit material. In addition, the court finds that the sexually explicit material could be easily identified and separated from the remainder of Plaintiff's writings. Thus, the court finds that there is a genuine issue of material fact as to whether the confiscation of all of Plaintiff's writings as sexually explicit was justified under the factors laid out in *Turner*.

The court finds that the fourth *Turner* factor—whether alternatives existed that would have fully accommodated Plaintiff's rights at *de minimis* cost to valid penological interests— appears to weigh heavily in Plaintiff's favor. The court notes that Billie Casper's response to

---

[3] Plaintiff's motion to dismiss his claims regarding the sexually explicit material was filed on March 12, 2007. To date, Defendants have not filed a response to that motion.

Plaintiff's Level 2 grievance appears to recognize the existence of alternatives to confiscating all of Plaintiff's writings, specifically, allowing Plaintiff to send the sexually explicit portion of his writings out of the prison. The prison regulation cited by Defendants as justification for taking Plaintiff's writings also recognizes this option. Given the availability of this option, it is unclear from the record why this alternative was not pursued.

The court finds that Plaintiff has satisfied his burden of showing that genuine issues of material fact exist regarding whether Defendants were justified in confiscating all of Plaintiff's writings on the ground that some of them were sexually explicit.

### 3. Writings confiscated as contraband

Defendants also argue that confiscation of Plaintiff's writings was justified under prison regulations prohibiting inmates from misusing prison resources or appropriating prison property for their personal use. Specifically, Defendants assert that Plaintiff's writings were produced using prison library resources in violation of prison policies, making the writings contraband subject to confiscation. Defendants assert that prison regulations regarding misuse of prison resources and possession of contraband are reasonably related to legitimate penological objectives of promoting security, safety, and order within the institution.

Defendants point to two legal precedents to support their conclusion that Plaintiff's writings were properly confiscated as contraband because they were produced using misappropriated prison resources. The first case, _Baughman v. Saffle_, 24 Fed. Appx. 845 (10th Cir. 2001), involved an inmate who sued prison officials alleging denial of due process based on prison officials' confiscation and disposal of the inmate's personal diaries. One of the diaries was written in a log book which was donated by the Sons of the American Legion and provided

to the inmate for use as the organization's public relations officer. The prison seized and destroyed this diary reasoning that the book belonged to a prison organization and, by extension, to the prison. The inmate was also disciplined for misappropriating prison property. In upholding the disciplinary sanctions imposed on the inmate, the Tenth Circuit held that the prison's reasoning was not "so arbitrary as to violate plaintiff's right to due process of law." *Id. at 848*.

In the second case cited by Defendants, *Gardner v. Johnson*, 429 F. Supp. 432, 433-34 (E.D. Mich 1977), an inmate sued prison officials for confiscating a diary containing the inmate's "personal thoughts and actions." The court held that seizure of the writings did not violate the inmate's due process rights because they were written in a "Standard Office and Desk Diary" which belonged to the prison and was considered contraband when found in an inmate's possession.

Defendants argue that the computer discs and paper on which Plaintiff's stories were written are no different than the log-book and office diary seized in the *Baughman* and *Gardner* cases. As an initial matter, the court notes that the *Baughman* and *Gardner* decisions relied upon due process principles, not First Amendment analysis. More importantly, however, in the present case, there remains a genuine factual dispute over whether Plaintiff legitimately obtained or used the discs and paper on which his stories were stored.

Defendants assert that Plaintiff's stories were printed on computer paper "*not generally* available to inmates without a property contract and written USP authorization." (Carlson Aff. at 1.(emphasis added)) They further state that Plaintiff did not have a property clearance or contract for the manuscripts. Plaintiff, on the other hand, has presented evidence that the paper was

available to inmates free-of-charge through the library and that prison policies allow inmates to use "computer word processing in the prison library" for personal business. Moreover, Defendants do not dispute Plaintiff's contention that the discs on which his writings were stored are regularly checked out to inmates through the library, and that Plaintiff's discs were seized from their proper secured storage in the prison library. The court also finds it relevant that Plaintiff was never disciplined for misappropriation of prison resources.

Accepting without hesitation Defendants' contention that regulation of inmate property and confiscation of contraband is reasonably related to legitimate penological interests, the court, nevertheless, finds that genuine issues of material fact remain as to whether the discs and/or paper on which Plaintiff's writings were stored qualified as contraband. Thus, the court finds that Plaintiff has satisfied his burden of showing that Defendants are not entitled to summary judgment based on their argument that Plaintiff's writings were properly seized as contraband.

## B. Qualified Immunity Analysis

Having concluded that genuine issues of material fact remain as to whether Defendants confiscation of the Plaintiff's manuscripts violated the First Amendment, the court must now address Defendants' assertion of qualified immunity.

### 1. Legal standard

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously

permitted to go to trial." <u>Saucier v. Katz</u>, 533 U.S. 194, 200-01 (2001) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Thus, immunity questions should be addressed at the earliest possible stage in litigation. <u>Id.</u> (citing <u>Hunter v. Bryant, 502 U.S. 224, 227 (1991)(per curiam)</u>).

Because of the underlying purposes of qualified immunity, courts address qualified immunity questions differently from other summary judgment decisions. <u>Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001)</u>. After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must meet a "heavy two-part burden." <u>Id.</u> Plaintiff must first establish that the facts, taken in the light most favorable to Plaintiff, show that the officer's conduct violated a constitutional right. <u>Saucier, 533 U.S. at 201</u>. If Plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established." <u>Id.</u> This determination must be made "in the light of the specific context of the case, not as a broad general proposition." <u>Id.</u> And, "the relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id. at 202</u>. If the plaintiff fails to satisfy either part of this "heavy two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

### 2. Violation of clearly established law

The court has already concluded that a favorable view of the record in this case supports a finding that Defendants violated Plaintiff's constitutional rights by confiscating some of his writings without a legitimate penological interest. Thus, the court will focus on the second part of the qualified immunity analysis--whether "in the light of the specific context of [this] case" it

should have been clear to Defendants that their conduct was unlawful.

A law is clearly established for qualified immunity purposes if there is a U.S. Supreme Court or Tenth Circuit decision directly on point, or if the "clearly established weight of authority from other circuits" found a constitutional violation from similar actions. *Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999). However, even if the violated right is clearly established, "qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the [qualified] immunity defense." *Saucier*, 533 U.S. at 205-06. Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, (1986).

As Plaintiff correctly points out, the legal standard for evaluating the reasonableness of prison actions that infringe on inmates' First Amendment rights was well established when the events leading to this case occurred. However, that is not enough for Plaintiff to overcome the presumption of qualified immunity. Defendants' entitlement to qualified immunity depends, not on the well-established nature of such general legal principles, but on the reasonableness of Defendants' action in the specific context of this case.

The record before the court shows that, despite remaining issues of fact as to whether a constitutional violation actually occurred here, it would not have been clear to reasonable officers in Defendants' positions that their actions were unlawful. The court finds that the record in this case supports Defendants' contention that they intended their actions as enforcement of valid

USP policy. While additional facts have been developed through discovery which raise doubts as to the validity of the confiscation of Plaintiff's writings in their entirety, those facts were not obvious to Defendants at the time of their actions. For instance, Defendants could have reasonably been unaware of the specific circumstances under which Plaintiff produced his writings, making any determination as to whether the writings were contraband difficult and uncertain. Similarly, Defendants could have reasonably failed to discern that the bulk of Plaintiff's writings were not sexually explicit. In the prison context of overwhelming security concerns and limited resources, such reasonable mistakes are inevitable.

More importantly, even if Defendants misapprehended the law governing the circumstances of this case, their legal determination that confiscation of Plaintiff's writings was supported by legal precedent was reasonable. "A mistake of law may be 'reasonable' where the circumstances 'disclose substantial grounds for the officer to have concluded he had a legitimate justification under the law for acting as he did.'" _Holland ex rel. Overdorff v. Harrington_, 268 F.3d 1179, 1196 (10th Cir. 2001) (quoting _Saucier_, 533 U.S. at 208). Defendants' concerns regarding sexually explicit material and misuse of prison resources are substantial grounds supporting Defendants' course of action. Despite Plaintiff's protestations and the opinion of the prison contract attorney that the writings should be returned, Defendants could have reasonably, if mistakenly, taken a different view of the law. While the precedents cited by Defendants as justification for their actions are not directly on point, under qualified immunity the burden rests with Plaintiff to show that existing precedent clearly prohibited Defendants' actions. Plaintiff has not met this burden. Nor has the court's own research revealed any controlling precedent that would have placed Defendants on notice that their actions were clearly unconstitutional.

Thus, the court concludes that even if the remaining issues of fact in this case were decided in Plaintiff's favor, Defendants would still be entitled to qualified immunity on Plaintiff's First Amendment claim.

## II. INJUNCTIVE RELIEF

Despite its conclusion that Defendants are entitled to qualified immunity against Plaintiff's claim for damages arising from the confiscation of his writings, the court must also address whether Plaintiff is entitled to injunctive relief based on the likelihood of an ongoing violation of Plaintiff's constitutional rights. Injunctive relief is available to a litigant only upon a showing that there is a "real or immediate threat that the plaintiff will be wronged again – a 'likelihood of substantial and immediate irreparable injury.'" *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502, 94 S. Ct. 669 (1974)).

Based on its review of the evidence in this case the court finds there is a substantial likelihood that Plaintiff's constitutional rights will be violated if he is permanently deprived of his non-sexually explicit writings. Accordingly, the court finds that Plaintiff is entitled to an injunction prohibiting prison officials from destroying Plaintiff's non-sexually explicit writings. In addition, prison officials shall allow Plaintiff to possess or disposition his non-sexually explicit writings as required by prison policies. Plaintiff may be charged with the reasonable costs of the computer disc or other media on which his writings are stored.

## ORDER

Based on the foregoing analysis, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's motion to dismiss with prejudice his claims regarding the sexually explicit writings confiscated by Defendants is GRANTED (#56);

(2) Defendants' motion for summary judgment on Plaintiff's remaining claims is GRANTED (#48) based on Defendants' entitlement to qualified immunity;

(3) prison officials are enjoined from destroying Plaintiff's non-sexually explicit writings and shall make arrangements for their immediate return to Plaintiff in accordance with this order and prison policies; and,

(4) the Clerk's Office is directed to close this case.

SO ORDERED.

DATED this 27th day of March, 2007.

BY THE COURT:

Paul G. Cassell
United States District Judge